TEXARKANA & FT. S. RY. CO. v. BRASS. (No. 7188.)

(Court of Civil Appeals of Texas. Dallas. March 20, 1915. Rehearing Denied April 24, 1915.)

1. APPEAL AND ERROR ☞759—ASSIGNMENTS OF ERROR—SPECIFICATION OF ERRORS—REFERENCES TO RECORD.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1607, providing that in all cases of appeal or writ of error to the Courts of Civil Appeals a trial shall be on an error in law either assigned or apparent on the face of the record, where the assignment of error assembles at the proper place in the brief a group of facts which may be verified by reference to the pages of the transcript and the statement of facts pointed out in the assignment, the whole of such assignment must be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3094; Dec. Dig. ☞759.]

2. CARRIERS ☞153 — CARRIAGE OF GOODS— FOREIGN SHIPMENTS — LIMITATION OF LIABILITY—NEGLIGENCE.

A carrier of goods may limit its liability by stipulation in the bill of lading for loss of a foreign shipment, although it will be liable for loss occurring through an excepted cause, if its negligence contributed thereto.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 687–690; Dec. Dig. ☞153.]

3. CARRIERS ☞136 — CARRIAGE OF GOODS— DELIVERY TO CARRIER—EVIDENCE — DIRECTING VERDICT.

In an action against a carrier for loss of baled cotton through fire, where the evidence

was insufficient to show delivery of the shipment to the carrier, or its negligence contributing to the loss, it was error to direct a verdict for plaintiff.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 478, 596–598; Dec. Dig. ☞136.]

Appeal from District Court, Hill County; Horton B. Porter, Judge.

Action by Franz Brass against the Texarkana & Ft. Smith Railway Company. Judgment for plaintiff, and defendant appeals. Reversed and set aside, and judgment rendered for defendant.

Glass, Estes, King & Burford, of Texarkana, for appellant. C. M. Smithdeal, of Dallas, and Morrow & Morrow, of Hillsboro, for appellee.

RASBURY, J. Heretofore, upon objections by appellee to the sufficiency of the record, we affirmed this case without considering the assignments of error; our action being based upon the failure of appellant to bring into review by sufficient bill of exception the action of the trial court in refusing to give a peremptory instruction directing verdict for appellant and in giving such instruction in favor of appellee. We refused to consider the assignments on the ground: (1) That the bill of exceptions preserving the objections of appellant to the action of the court as stated did not comply with the amended practice act; and (2) that the action of the court in instructing verdict for appellee was not, under the evidence in the record, error apparent on the face of the record. We now conclude that we were in error in the latter respect and that the assignments of error do disclose fundamental error or error apparent on the face of the record. We therefore withdraw our original opinion and herewith restate and reconsider the appeal as a whole on appellant's motion for rehearing.

Appellee sued St. Louis Southwestern Railway Company originally, and appellant subsequently, to recover the value of certain baled cotton destroyed by fire, while on the platform of a compress company at Athens, Tex., where it had been delivered for transportation and for which appellant had issued its bill of lading prior to the time of the fire. Upon trial appellee dismissed the case as against the St. Louis Southwestern Railway Company, and at the conclusion of the testimony the trial judge instructed the jury to return verdict for appellee for the number of bales of cotton sued for, referring to the jury for their determination the value thereof, which they found to be the amount of the judgment herein, and upon which instruction and verdict judgment was accordingly entered, and from which this appeal is taken.

The sworn and undenied pleading and the testimony develop the following essential facts: Prior to January 3, 1908, appellee's cotton was on the platform of a cotton compress at Athens, Tex., for the purpose of being compressed preliminary to shipment from Athens, to Port Arthur, Tex., over the line of the Texas & New Orleans Railway Company, and for which purpose said company had issued bills of lading. Upon request of appellee, and due to the fact that the cotton was to be shipped to the German Empire, appellant on said January 3, 1908, issued and delivered to appellee, in lieu of the local bills of lading theretofore issued to appellee by said Texas & New Orleans Railroad Company, export or foreign bills of lading in which appellant acknowledged receipt of and agreed in connection with other carriers on the route to transport the cotton to the port of Port Arthur, Tex., and thence to the port of Bremen, Germany, and there deliver same to the consignee. Appellant had no line of railway at Athens, Tex., but after compression had it not burned, the cotton would have been delivered to and received by the Texas & New Orleans Railway Company, under authority of the bill of lading issued by appellant and by it delivered to appellant at the junction of appellant's line of railway with the line of said Texas & New Orleans Railroad Company, and by appellant in turn transported as heretofore stated. On January 9, 1908, the cotton for which recovery was had was destroyed by fire set out by sparks emitted negligently from the engines of the St. Louis Southwestern Railway Company, while being operated in proximity to said cotton so stored on the compress platform. In addition to the provisions of the bill of lading already quoted, it also provided that "no carrier * * * in possession of the property herein described shall be liable for loss thereof or damage thereto by causes beyond its control, or by floods or by fires," or for "loss or damage not occurring on its own road or its portion on the through route nor after said property is ready for delivery to the next carrier or to consignee." The evidence as to the value of the cotton at the time it was destroyed supports the finding of the jury on that issue.

[1-3] The appellant at the conclusion of the trial requested the court to instruct verdict for it, tendering such a charge. This the court refused to do, indorsing such refusal upon the charge, and instead peremptorily directed verdict for appellee, to which action appellant at the time filed written exceptions, asserting that by the undenied pleading and undisputed evidence appellee was not, as a matter of law, entitled to recover, but that, on the contrary, appellant was. The action of the court, as related, constitutes appellant's first assignment of error. In limine, however, appellee objects to consideration of the assignment for the reason, among others, that "there is no bill of exception in the record affirming the truth of the facts set out in said assignment of

error." This objection is grounded upon the amendments to the practice acts passed by the Thirty-Third Legislature (Acts 33d Leg. c. 59) as construed in the leading case of St. Louis Southwestern Railway Company v. Wadsack, 166 S. W. 42, and followed by this and practically all the other Courts of Civil Appeals and in which the Supreme Court has denied the writ of error. W. R. Case & Sons Cutlery Co. v. Folsom, 170 S. W. 1066; Texas Midland R. R. v. Fogleman, 172 S. W. 558; Horton v. Texas Midland R. R., 171 S. W. 1023, and cases cited. In a reply brief, however, appellant presents the facts contained in its first assignment of error as matter constituting fundamental error or error apparent on the face of the record. Article 1607, Vernon's Sayles' Texas Civil Statutes 1914, provides that causes in this court shall be submitted and considered in a variety of ways, among others, "on an error in law, either assigned or apparent on the face of the record." What is error apparent on the face of the record as contemplated by article 1607 has necessarily been fruitful of discussion, and as a consequence much has been said upon the point. In the leading case of Houston Oil Co. v. Kimball, 103 Tex. 94, 122 S. W. 533, it was ruled that by error apparent on the face of the record is meant that which may be "seen upon looking at the face of the record; that is, the assignment itself, the fact pointed out by it." Thus it is seen that the "record" and the "assignment" referred to in the opinion contemplate facts taken from the actual record and appropriately assembled in the brief as constituting the claimed fundamental error, and pointed out by the assignment. Such in fact is the holding in the case cited, since it is there ruled that "the fact pointed out by it" (the assignment) must disclose the error. This view is sustained by rule 34 of this court (142 S. W. xiii), providing that, in propositions relating to fundamental errors of law apparent upon the record, "enough must be stated to make the error of law which pervades the case obviously apparent, without requiring the court to search through the record to find error, which they will not do unless properly pointed out."

The refusal of the court below to give the requested peremptory charge and in giving such charge for appellee was not the only fact pointed out by the assignment, and we were in error in grounding our refusal to consider the assignment on that isolated fact, because, even though properly excepted to, the giving or refusing of such charge may or may not have been error, depending entirely upon the evidence and the facts and inferences deducible therefrom. On the contrary, when, as is the case here, the assignment assembles at the proper place in the brief a group of facts, the verity of which can be sustained by reference to the pages in the transcript and the statement of facts pointed out in the assignment, the whole must be considered.

[2] So, considering such facts now it is apparent therefrom that the verdict directed by the court was unauthorized because it appears from the undisputed facts that the cotton was never actually or constructively delivered to appellant, was not destroyed while in its possession, nor as the result of its negligence. As related prior to the issuance of the bill of lading by appellant, the cotton was on a compress platform at Athens, Tex., under contract of carriage by the Texas & New Orleans Railroad Company after compression from Athens to Port Arthur, Tex. For his own convenience appellee desired a through or foreign bill of lading in lieu of the local bill by which the cotton was then covered, and, for reasons not apparent from the record, sought same from appellant, instead of the Texas & New Orleans Railroad Company. The desired bill of lading was issued by appellant, and by its terms, which were assented to by appellee, it provided, in effect, that appellant's liability should be limited to the loss or damage occurring on its own line or its portion on the through route, and that appellant should not be liable for any loss thereof or damage thereto by causes beyond its control or by floods or by fire. As stated, the cotton was destroyed while on the platform of the compress by fire due to the negligence of the St. Louis Southwestern Railway Company. In connection with the facts recited, it is well settled that in cases of foreign shipments the carrier has the unrestricted right to limit its liability, and that when the shipper delivers his freight for foreign transportation under bill of lading limiting the carrier's liability the limitations are enforceable. Houston, East & West Texas Ry. Co. v. Inman, Akers & Inman, 134 S. W. 275, and cases cited. Such rule, is, however, subject to the limitation arising as matter of law that the carrier will be liable for the loss occurring through the excepted cause if the negligence of itself or its servants contributed thereto. Mo. Pac. Ry. Co. v. China Mfg. Co., 79 Tex. 26, 14 S. W. 785.

[3] Having in mind the recited facts and the principles of law governing the parties, it is clear that the case pivots upon whether there was a delivery to appellant of the destroyed cotton, and whether its destruction was due to the negligence of appellant. We have reached the conclusion that the facts fail to show delivery to appellant or any negligent act on its part contributing to its loss. The cotton was originally delivered to the compress by appellee for compression and delivery to the Texas & New Orleans Railroad Company, which company had issued bill of lading for transportation to Port Arthur, Tex. Just what relation that condition created as between appellee and the Texas & New Orleans Railroad Company is immaterial as relates to appellant. But it

does establish beyond controversy that when appellant issued its bill of lading the cotton was in the possession and control of appellee, or its agent the compress company, or its agent the Texas & New Orleans Railroad Company, and that such possession continued unchanged until it was destroyed by the negligent acts of the St. Louis Southwestern Railway Company. Such conclusion is sustained and emphasized by the further fact that appellant had neither depot nor line of railway in Athens, and that it was the intention of the parties and an undeniable fact that it could not receive and transport the cotton over its line of railway until it had been carried by the Texas & New Orleans Railroad Company to the junction of its line of railway with that of appellant, and of which appellee had full knowledge, since it was so provided by the terms of the bill of lading issued to him. Much cannot be said on the issue, since the facts are brief and fairly susceptible only of the conclusion we have reached. There being no delivery of the cotton to appellant, nor any act of negligence on its part contributing to its loss, there was as a consequence no liability, and there being no liability the court was without authority to direct verdict for appellee, from which the further result follows that fundamental error or error apparent of record is disclosed.

For the reasons stated, and believing our former holding erroneous, the judgment of the lower court is reversed and set aside, and judgment here rendered for appellant.

---

⬟For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes